J-A21022-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| DONYALE SHOWERS AND CHARLES SHOWERS | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellants | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | No. 810 EDA 2018 |
| SAM'S EAST, INC. | : | |

Appeal from the Judgment Entered February 19, 2018
In the Court of Common Pleas of Chester County Civil Division at No(s):
2016-06408

BEFORE:  PANELLA, J., OLSON, J., and McLAUGHLIN, J.

MEMORANDUM BY OLSON, J.:                **FILED NOVEMBER 06, 2018**

Appellants, Donyale Showers and Charles Showers, appeal from the
judgment entered on February 19, 2018.  We affirm.

The trial court summarized the facts of this case as follows:

On August 12, 2014, Ms. Showers and her daughter went to a
Sam's Club store located [] in Exton, Pennsylvania.  On that day,
it was raining.   Ms. Showers was wearing "athletic thongs."
Although store employees had placed weather mats on the floor
at the store's entrance, video footage presented at trial showed
that an employee had just previously entered the store with a line
of carts, which tracked water in from outside, leaving portions of
the concrete floor wet.  While entering the store, Ms. Showers
stepped off the weather mats, slipped and fell on the wet floor.
She fell and thereafter complained of pain in her entire right side,
including wrist, hip, elbow, knee, leg, ankle and shoulder.  Ms.
Showers continued to shop at the store following the fall for 30
minutes to an hour.

The following day, Ms. Showers went to Doctor's Best Urgent Care
where documents demonstrate that the chief complaint was pain
in the elbow, hip, and neck.  The records from Doctor's Best

revealed no abnormalities of the knee, leg, ankle or foot. Four days later on August 16, 2014, Ms. Showers took a walk with her husband. They walked approximately .7 mile from their home before turning around and making their way back. At the end of the 1.4 mile walk, Ms. Showers testified that her knee "gave out" and she fell directly onto her knee outside of her home.

On August 27, 2014, Ms. Showers went to see Dr. [Kevin] Mansmann with complaints about her right knee. At the exam, Ms. Showers mentioned both the fall at Sam's Club and the second fall outside of her home. Dr. Mansmann's records did not reveal any swelling or diffusion of the right knee. The exam was, in fact, unremarkable. An MRI showed no evidence of acute injury; rather, it showed arthritis underneath the kneecap. Ms. Showers commenced physical therapy which she completed in November of 2014.

In February of 2015, Ms. Showers followed up with Dr. Mansmann and complained of continued knee pain. Dr. Mansmann recommended arthroscopic surgery on her right knee, which Ms. Showers underwent on April 16, 2015. Dr. Mansmann's post-operative report revealed an inner rim tear in the lateral meniscus, which he repaired. Following surgery, Ms. Showers underwent another course of physical therapy. She testified that, although her knee remained sore, she was feeling better.

In his expert testimony, Dr. Mansmann opined that the tear to the lateral meniscus was caused by the **two** falls experienced by Ms. Showers in August of 2014. He also opined that Ms. Showers suffered a permanent injury. The defense presented expert testimony at trial by Dr. Laurence Wolf, who opined that Ms. Showers did not injure her knee in the incident at Sam's Club. He further opined that Ms. Showers had aggravated previously asymptomatic degenerative arthritis in her right knee.

At trial, the jury returned a verdict in which they found both Sam's Club and Ms. Showers 50% negligent and that each party's negligence was the factual cause of the injury to Ms. Showers. The jury awarded $7,481.40.

Trial Court Opinion, 3/13/2018, at 1-3 (emphasis in original).

Appellants filed a post-trial motion on February 5, 2018. The trial court denied relief by order entered on February 7, 2018 and entered judgment on February 19, 2018. This timely appeal resulted.[1]

On appeal, Appellants present the following issues for our review:

1. Did the trial court err and abuse its discretion when it held that the jury's verdict, which contained no award of damages for pain and suffering, was correct and not against the weight of the evidence?

2. Did the trial court err when it refused to submit to the jury a verdict slip that required the jury to list individually the amount awarded for each item of damage?

Appellants' Brief at 4.

For ease of discussion, we will examine Appellants' second issue first. In this case, the jury returned a verdict for Appellants in a lump sum amount of $7,481.40. *Id.* at 14. This sum equaled the total amount of medical expenses Ms. Showers sought at trial. *Id.* At a charging conference prior to jury deliberation, Appellants submitted a proposed verdict slip, which would have required the jury to specify its damage award by category including pain and suffering, medical expenses, and loss of consortium. *Id.* at 28-31. Appellants argue that the trial court erred by denying the request. As a result, Appellants contend there is no way "to say with certainty whether the jury's

---

[1] Appellants filed a notice of appeal on February 21, 2018. On February 26, 2018, the trial court ordered Appellants to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellants complied timely. The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on March 13, 2018.

award is solely for medical expenses or, as the trial court [] speculate[s], includes an award for pain and suffering." *Id.* at 31. Accordingly, Appellants believe they are entitled to a new trial on damages. *Id.*

We examine a trial court's oral jury instructions and use of verdict sheets to determine whether the trial court committed an abuse of discretion or error of law controlling the outcome of the case. *See Seels v. Tenet Health System Hahnemann, LLC*, 167 A.3d 190, 207 n.5 (Pa. Super. 2017) (citation omitted). Our Supreme Court recently reaffirmed:

> In order to preserve a jury-charge challenge for appellate review, a party must either: (1) lodge a contemporaneous objection on the record; or (2) make requested points for charge part of the record pursuant to Pa.R.C.P. 226(a), obtain an explicit trial court ruling upon the challenged instruction, and raise the issue in a post-trial motion.

*Jones v. Ott*, 2018 WL 3977960, at *6 (Pa. August 21, 2018) (some citations omitted). "Taken together, our rules of civil and appellate procedure, and our longstanding principles of preservation and waiver, dictate that, while a jury-charge challenge can be preserved under Pa.R.C.P. 227.1 by making proposed instructions part of the record and by raising the issue in a post-trial motion, the challenge is waived when the appellant fails to secure a record ruling from the trial court upon the proposed charge." *Id.* at *5. The *Jones* Court noted:

> Without an on-the-record ruling upon a proposed point for charge, an appellate court cannot know whether the trial court denied the point for charge, whether counsel withdrew the point for charge, or whether the parties agreed upon a compromise charge. Trials are dynamic, and it is not unusual for lawyers to modify or

- 4 -

withdraw points for charge that were previously drafted and submitted but that end up at variance with the record developed during the trial. Moreover, parties sometimes compromise as to certain instructions. Consequently, the mere filing of proposed points for charge cannot assure a record sufficient to allow meaningful appellate review.

***Jones***, 2018 WL 3977960 at *7.

Here, the trial court noted "Appellants did not object to the final form of the verdict sheet during trial proceedings or in their post-trial motion, and as such, any objection to the verdict sheet on appeal ha[s] been waived." Trial Court Opinion, 3/13/2018, at 5. Upon review of the certified record, we agree. While Appellants argue that they raised the proposed verdict slip at a charging conference prior to trial, there is no record evidence of the charging conference. Accordingly, the trial court did not make a record ruling on the proposed verdict slip. At the end of trial, the trial court instructed the jury and then asked counsel if the instructions were acceptable. ***See*** N.T., 10/10/2017, at 96. Counsel for Appellants acquiesced and did not object. ***Id.*** at 97. Later, in their post-trial motion, Appellants argued that the trial court erred in failing to provide the jury with the proposed verdict slip. However, there is no record evidence of the charging conference and Appellants did not contemporaneously object to the proposed verdict slip at trial. Accordingly, Appellants cannot subsequently save the issue by raising it in a post-trial motion. As such, we are constrained to find Appellants' second issue waived.

In their first issue presented, Appellants argue that the trial court erred as a matter of law or abused its discretion when it determined that the verdict

was not against the weight of the evidence. *Id.* at 16-18. As previously mentioned, Appellants posit that because the jury returned a verdict for Ms. Showers in the full amount of her submitted medical expenses, the jury did not award damages for pain and suffering. *Id.* at 14. Thus, Appellants contend that "the injuries the jury found [Ms. Showers] sustained were too severe for the trial court to have had a reasonable basis to believe that the jury's award of medical expenses, without compensation for pain and suffering, was based on any determination properly within the province of the jury and is so contrary to the evidence as to shock one's sense of justice." *Id.* at 28.

Our standard of review is as follows:

This Court's review of a weight claim is a review of the trial court's exercise of discretion, not of the underlying question of whether we believe that the verdict is against the weight of the evidence. Moreover, a new trial will be granted on the basis that the jury's verdict is against the weight of the evidence only when the verdict is so contrary to the evidence as to shock one's sense of justice. In reviewing the trial court's refusal to grant a new trial on this basis, this Court reviews all of the evidence.

*Krishnan v. Cutler Group, Inc.*, 171 A.3d 856, 881 (Pa. Super., 2017) (internal citations, quotations, and brackets omitted). We may affirm the trial court's decision on any legal basis. *Communications Network International, Ltd. v. Mullineaux*, 187 A.3d 951, 965 (Pa. Super. 2018).

Here, the trial court determined:

In the case *sub judice*, the jury determined that Sam's East was 50% negligent and that such negligence was the factual cause of Ms. Showers' injury. The jury also found Ms. Showers to be 50%

- 6 -

negligent. It appears that the jury concluded that Sam's East was negligent in maintaining a safe, dry entrance to the store so as to prevent slip and falls like the one Ms. Showers experienced. The jury also determined that Sam East's failure to maintain the store entrance was the factual cause of Ms. Showers' slip and fall, which caused her to endure pain to her right hip, elbow and neck (the areas of complaint when Ms. Showers first presented to the urgent care center). It is entirely possible that the jury concluded that $7,481.40 was adequate compensation for the minor injuries to the hip, elbow and neck which Ms. Showers sustained during this initial fall.

*          *          *

[T]here is nothing in the record to suggest that the lump sum verdict was solely for medical expenses. The jury could have made this award using the medical expenses as a guidepost.

Trial Court Opinion, 3/13/2018, at 6.

We agree with the trial court's assessment. The trial court instructed the jury regarding negligence, comparative negligence,[2] and the various damages Appellants sought (including medical expenses, pain and suffering, embarrassment and humiliation, loss of the ability to enjoy the pleasures of life, and disfigurement). N.T., 10/10/2017, at 89-100. "We presume that

_____

[2] Comparative negligence is statutorily defined as:

In all actions brought to recover damages for negligence resulting in death or injury to person or property, the fact that the plaintiff may have been guilty of contributory negligence shall not bar a recovery by the plaintiff or his legal representative where such negligence was not greater than the causal negligence of the defendant or defendants against whom recovery is sought, but any damages sustained by the plaintiff shall be diminished in proportion to the amount of negligence attributed to the plaintiff.

42 Pa.C.S.A. § 7102(a).

juries follow the trial court's instructions." ***Renninger v. A & R Machine Shop***, 163 A.3d 988, 1000 (Pa. Super. 2017) (citation omitted). The jury returned a verdict finding Ms. Showers 50% comparatively negligent for her injuries. Thus, the jury was required to reduce Ms. Showers' award by 50%. Ms. Showers proved $7,481.40 in medical expenses at trial. Assuming the jury believed this, they would have to reduce that sum by 50% when applying the comparative negligence statute. As such, Ms. Showers' medical expenses award would be $3,740.20. The jury then awarded $3,740.20 for other damages. Stated another way, the jury believed that Ms. Showers should receive $14,962.80 in total damages, which ostensibly included damages for pain and suffering.[3] However, because Ms. Showers was 50% responsible for her own injuries, she received her apportioned amount of $7,481.40. Upon review, we conclude the overall award was not against the weight of the evidence presented. It simply does not shock the conscience of the court. Hence, we deem this issue without merit.

Judgment affirmed.

Judge Panella joins.

Judge McLaughlin concurs in the result.

---

[3] Appellants concede in their second issue that because the damage award was for a lump sum, they jury's damage apportionment is mere speculation. Appellants' Brief at 30-31.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/6/18